**CONSUMER ADVISORY BOARD, et al., Plaintiffs,**

v.

**Robert W. GLOVER, et al., Defendants.**

**Civ. No. 91–321–P–C.**

United States District Court, D. Maine.

Sept. 30, 1993.

constitution was a sufficient basis for modifying a provision in a consent decree requiring one prisoner per cell.

Judson Esty–Kendall, Thomas H. Kelley, Pine Tree Legal Assistance, Inc., Portland, ME, Neville Woodruff, Auburn, ME, for plaintiffs.

Richard G. Bergeron, Asst. Atty. Gen., Augusta, ME, for defendants.

*MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANTS MOTION TO DISSOLVE INJUNCTION AND TERMINATE CONSENT DECREE*

GENE CARTER, Chief Judge.

This action was instituted on October 23, 1991, by Plaintiff Consumer Advisory Board and a group of Pineland Center residents, outpatients, and guardians to enforce a Consent Decree entered by this Court in 1978. *Wuori v. Zitnay,* (Docket No. 75–80–P) (D.Me. July 14, 1978) (in the current action, Consent Decree is found at Docket No. 7, Exhibit B). The Consent Decree, which settled a class action brought under 42 U.S.C. section 1983, governs the operation of Pineland Center, a state-run institution for the mentally retarded, and includes standards that promote the placement and support of residents in less restrictive community programs. The Complaint joins as Defendants the Maine Commissioner of Mental Health, Robert W. Glover, along with other state officials. Currently pending before the Court is Defendants' Motion to Dissolve the Decree based on the argument that the Decree has achieved its purpose or, alternatively, that substantial changes in factual circumstances or law warrant its dissolution. The Court will deny the Motion to Dissolve because Defendants have failed to sustain their burden of proof as established in *Board of Education of Oklahoma City Public Schools*

*v. Dowell,* 498 U.S. 237, 111 S.Ct. 630, 112 L.Ed.2d 715 (1991), and *Rufo v. Inmates of Suffolk County Jail,* ―― U.S. ――, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). Before addressing Defendants' arguments, the Court will briefly discuss the procedural history of this case.

## I. PROCEDURAL HISTORY

Prior to filing the current motion, Defendants asked this Court to dismiss Plaintiffs' action arguing that the Consent Decree was no longer enforceable. Defendants pointed to a 1983 order issued by this Court after a finding of substantial compliance with the Decree. *Wuori v. Zitnay,* (Docket No. 75–80–P) (D.Me. July 14, 1978) (final order of the Court issued *sub nom. Wuori v. Concannon,* November 22, 1983) (in the current action, the final order is found at Docket No. 7, Exhibit D). The order "discharged" the Defendants "from the supervision of the Court" while reserving "jurisdiction over the case for a period of three years." Since no further motions were filed and no entries were made in the docket, Defendants argued that the court order effectively terminated the degree in 1986, well before Plaintiffs filed the current enforcement action in 1991.

This Court, per Hornby, D.J., ruled in favor of Defendants based on its conclusion that the 1983 order had effectively terminated the Decree. The ruling was appealed by Plaintiffs to the Court of Appeals for the First Circuit which vacated the dismissal and remanded the case in *Consumer Advisory Board v. Glover,* 989 F.2d 65 (1st Cir.1993). The Court of Appeals found that the 1983 court order failed to satisfy the standard for termination as required by the United States Supreme Court in *Dowell,* 498 U.S. at 246, 111 S.Ct. at 636 (holding that a continuing injunctive decree concerning school desegregation would be deemed terminated only after "a rather precise statement" of the district court's intention to terminate). While finding that "a continuing obligation was created by the original 1978 consent decree", the Court of Appeals stated:

> The Supreme Court's requirement of a rather precise statement to terminate consent decrees is not the whole story. In *Dowell* the Supreme Court has made clear that institutional reform decrees need not endure forever.... Rather, the district court has considerable discretion, especially after years of apparent compliance have passed, to conclude that the decree should be dissolved because it has achieved its purpose or no longer serves the public interest. That remedy—which can be invoked by a motion to terminate the 1978 consent decree—remains fully available to the state.

989 F.2d at 68. Shortly after the case was remanded, Defendants filed the current Motion to Dissolve the Decree. (Docket No. 31).

## II. STANDARD OF REVIEW

Defendants and Plaintiffs disagree as to which standard this Court should apply in reviewing Defendants' Motion to Dissolve pursuant to Federal Rule of Civil Procedure 60(b)(5) and (6).[1] Plaintiffs argue that the applicable standard is established by *Rufo,* which held that a party seeking modification of a consent decree governing institutional reform must establish that a "significant change in facts or law" warrants revision of the decree and that "the proposed modification is suitably tailored to the changed circumstance." ―― U.S. at ――, 112 S.Ct. at 753. Defendants, on the other hand, point to the standard suggested by the Court of Appeals for the First Circuit when it remanded this case, instructing the Court that a dissolution of the decree would be warranted if "it has achieved its purpose or no longer serves the public interest." 989 F.2d at 68. A slightly modified version of this standard was articulated by the Supreme Court in *Dowell,*

---

1. Federal Rule of Civil Procedure 60(b) reads in relevant part as follows:

   On motion and upon such terms as are just, the Court may relieve a party or the parties' legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

noting that a decree may not be changed " 'if the purposes of the litigation as incorporated in the decree ... have not been fully achieved.' " 498 U.S. at 247, 111 S.Ct. at 636.[2]

This Court believes that these two standards serve different purposes. *Dowell* has been applied in situations where parties allege that compliance has led to achievement of the goals of the decree; the *Rufo* standard has been applied where parties allege that a substantial change in facts or law render compliance "onerous," "unworkable," or "detrimental to the public interest." —— U.S. at ——, 112 S.Ct. at 753. Thus as a general rule, courts have used *Dowell* as the standard for reviewing motions to dissolve decrees and *Rufo* as the standard for motions to modify.[3] Because Defendants have argued under both standards, the Court will consider each in turn.[4]

### III. REQUIREMENTS FOR DISSOLUTION UNDER DOWELL

■ Defendants argue that the Pineland Consent Decree achieved its purpose in 1983 with this Court's finding that Defendants were in substantial compliance with its provisions. Defendants further argue that Plaintiffs were in basic agreement with these findings which formed the basis for the Court order relinquishing jurisdiction. According to Defendants, all this Court need do now is issue a clear statement that the Decree has been terminated "because the record amply supports a finding that the Decree achieved its purposes as early as 1983 and no later than 1986." Defendants' Memorandum in

Support of Motion to Dissolve Injunction and Terminate Consent Decree (Docket No. 32) at 8.

Defendants' argument ignores the Court of Appeals' ruling that "a continuing obligation was created" by the Decree; an obligation that was not extinguished by this Court's findings of substantial compliance in 1983. *Glover*, 989 F.2d at 68. Likewise, the Court of Appeals for the First Circuit found significant a statement in the special master's report indicating that "the standards in the Consent Decree remain in force indefinitely...." *Id.* at 66. The Court of Appeals also pointed to language in the 1983 order indicating that the Consent Decree "shall be applicable to and binding upon the defendants and their successors...." *Id.* at 68, n. 4. Further, Plaintiffs argue persuasively that many obligations in the Decree could not have been fulfilled by 1983 or 1986, such as the requirement of creating "62 new community placements every six months until the needs of the class are met." Consent Decree at Appendix B, § C ¶ 8.

In like vein, Defendants misinterpret *Dowell*, a case with facts that are strikingly similar to the Pineland litigation. *Dowell* involved a desegregation decree over which the district court *relinquished jurisdiction in 1977*. When Defendant School Board announced a plan to end busing in 1985, parents of black children challenged the action as violative of the decree. Holding that the 1977 order was not "precise" enough to terminate the decree, the Supreme Court remanded the case, authorizing dissolution if Defendants could show that the purposes of the litigation had been achieved.[5] As part of

---

**2.** The Supreme Court was quoting from an earlier opinion, *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968).

**3.** See *United States v. City of Miami*, 2 F.3d 1497, 1502–06 (11th Cir.1993) (instructing lower court on remand to apply *Rufo* standard to motions seeking modification and *Dowell* standard to motions seeking termination of consent decrees stemming from institutional reform litigation).

**4.** However, the Court of Appeals for the First Circuit has indicated that the *Rufo* standard may be applied in considering requests for "relaxation of, *or release from*" consent decrees estab-

lished to bring about institutional reform (emphasis added). See *Mackin v. City of Boston*, 969 F.2d 1273, 1275 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1043, 122 L.Ed.2d 352 (1993).

**5.** The Court stated:
(A) finding by the District Court that the Oklahoma City School District was being operated in compliance with the commands of the Equal Protection Clause of the Fourteenth Amendment, and that it was unlikely that the Board would return to its former ways, would be a finding that the purposes of the desegregation litigation had been fully achieved. *Dowell*, 498 U.S. at 247, 111 S.Ct. at 636.

500

that finding, the Court instructed the lower court to determine whether Defendants made a sufficient *showing of compliance as of 1985,* when the plan to halt busing was adopted and suit was filed. 498 U.S. at 249–50, 111 S.Ct. at 637–38. As applied to this case, *Dowell* requires Defendants to make a showing of current compliance with the Consent Decree as a prerequisite for obtaining dissolution. Instead, Defendants have rested their argument upon findings made in 1983 and have failed to address allegations in Plaintiffs' Complaint regarding current violations.[6]

## IV. REQUIREMENTS FOR DISSOLUTION UNDER RUFO

■ Having failed to meet their burden under *Dowell,* Defendants argue, in the alternative, that a "significant change in factual conditions or in law" warrant dissolution. *Rufo v. Inmates of Suffolk County,* —— U.S. at ——, 112 S.Ct. at 760. The Supreme Court articulated this standard to encourage lower courts to be more flexible in reviewing requests for modification of consent decrees governing institutional reform. As the Court explained, since "such decrees often remain in place for extended periods of time, the likelihood of significant changes occurring during the life of the decree is increased." *Id.* at ——, 112 S.Ct. at 758. While courts should be open to considering such requests, *Rufo* clearly places the initial burden of proof upon the movant who must establish that "a significant change in circumstances warrants revision of the decree." *Id.* at ——, 112 S.Ct. at 760.

Rather than meet this burden, Defendants again hark back to the past, arguing that the *1983* findings of substantial compliance constitute a significant change in factual conditions at Pineland to warrant dissolution. But the *Rufo* standard is directed towards the present, at the point of time when litigants stand before the Court. The standard directs Defendants to demonstrate changes in factual conditions that have made compliance

with the Consent Decree too "onerous," "unworkable because of unforeseen obstacles," or "detrimental to the public interest." *Id.* at ——, 112 S.Ct. at 753 (listing bases for modifying or dissolving a consent decree). But Defendants make no argument with respect to the difficulties of complying with the Pineland Decree and hence fail to demonstrate a significant change in facts that would warrant dissolution.

■ Defendants do point to substantial changes in the law since the Pineland Decree was reached in 1978. Those changes include a major decision by the Supreme Court concerning the constitutional rights of mentally retarded persons who are being held in state custody. *Youngberg v. Romeo,* 457 U.S. 307, 315–319, 322, 102 S.Ct. 2452, 2457–2460, 2461, 73 L.Ed.2d 28 (1982) (holding that an institutionalized mentally retarded person has constitutionally protected rights to adequate food, shelter, clothing, medical care, freedom from undue bodily restraint and "minimally adequate or reasonable training to ensure safety and freedom from undue restraint.") Based on *Youngberg,* Defendants argue that many of the standards embodied in the Consent Decree, particularly those pertaining to the right to live in the least restrictive setting, no longer have a basis in the Constitution. Consequently, they argue that this Court, at a minimum, should release them from provisions in the Decree governing the provision of services and placement in community programs.

It was precisely this type of argument that the Supreme Court rejected in *Rufo.* Defendant correctional officials sought to modify a decree provision mandating one prisoner in each cell based on a later Supreme Court ruling establishing that double celling *may not* violate the Constitution. —— U.S. at ——–——, 112 S.Ct. at 753–54. The Court stated:

> To hold that a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree

---

**6.** Likewise, the Court of Appeals for the Sixth Circuit has clearly held that "a district court may not close a case governed by a consent decree without addressing pending claims that the de-

fendants have violated the decree," *Youngblood v. Dalzell,* 925 F.2d 954, 958 (6th Cir.1991) (citing *United States v. City of Cincinnati,* 771 F.2d 161, 168–69 (6th Cir.1985).

would undermine the finality of such agreements and could serve as a disincentive to negotiation of settlements in institutional reform litigation.

*Id.* at ——, 112 S.Ct. at 753. The Court further indicated that in considering proposed modifications of decrees, lower courts "should not strive to rewrite a consent decree so that it conforms to the constitutional floor." *Id.*[7] The fact, then, that the Supreme Court has issued a ruling indicating community placement may not be constitutionally required is not enough to warrant releasing the State from its obligations under the Decree.

■ Defendants' final argument involves the change in law brought about by the Supreme Court's decision in *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (holding that Federal Courts may not enjoin State officials based on violations of state law). Defendants argue that the State of Maine has incorporated many of the Decree provisions concerning community placement into its laws governing the rights of the mentally retarded at the same time as the Supreme Court has clarified there is no federal constitutional basis for asserting such rights. As Plaintiffs move the Court to enforce such provisions, the argument goes, then *Pennhurst* and the Eleventh Amendment will bar it from acting.

Plaintiffs are not calling on this Court to enforce Maine law but have based each claim for relief on specific provisions of a Consent Decree that initially derived from a federal cause of action. 42 U.S.C. § 1983. Defendants' assertion that the State of Maine has adopted some of the guiding principles of that Decree does not transform it into a document based on state law.[8] In *Lelsz v.*

*Kavanagh,* the principal case that Defendants cite in support of their argument, the Court of Appeals for the Fifth Circuit held that the Eleventh Amendment barred enforcement of provisions of a consent decree based on a reading of the original court order which indicated the provisions clearly stemmed from state law grounds. 807 F.2d 1243 (5th Cir.1987). The *Lelsz* court wrote:

> The district court's Order ... approving the decree painstakingly elicits the constitutional or statutory basis for relief afforded in every significant paragraph.... That order readily demonstrates that any rights the class members may have with regard to community placement were understood by the district court to originate in, and do in fact exist, in state law.

*Id.* at 1247. The Order issued by this Court, in contrast, indicates that the Pineland Consent Decree was based on federal law. That Decree has been found by the Court of Appeals for the First Circuit to have created ongoing obligations since it was reached in 1978. Defendants have been unable to make a sufficient showing that changes in factual conditions or law since that time warrant its dissolution.[9]

Accordingly, it is *ORDERED* that Defendants' Motion to Dissolve the Injunction and Terminate Consent Decree be, and it is hereby, *DISMISSED.*

So *ORDERED.*

---

7. *Rufo* does indicate that later clarifications of constitutional duties might support modification *if* the movant can show that their agreement to the decree was based on a misunderstanding of the governing law. Other changes in law that might warrant the modification of decrees include later rulings that render obligations under a decree unlawful or make legal certain practices that the decree was designed to prevent. —— U.S. at ——–——, 112 S.Ct. at 753–54.

8. This is not to say, however, that the Court will not be open to arguments later in the proceedings that specific enforcement actions requested by Plaintiffs may be overly intrusive upon the State's interests.

9. Since Defendants failed to establish sufficient change in facts or law, the Court finds it unnecessary to reach the second part of the *Rufo* test, *i.e.* "whether the proposed modification is suitably tailored to the changed circumstance." —— U.S. at ——, 112 S.Ct. at 760.